```
 1 │ RANDY S. GROSSMAN
   │ United States Attorney
 2 │ MELANIE K. PIERSON
   │ Assistant United States Attorney
 3 │ California Bar No. 112520
   │ Federal Office Building
 4 │ 880 Front Street, Room 6293
   │ San Diego, California 92101-8893
 5 │ Telephone: (619) 546-7976
   │ Email: Melanie.Pierson@usdoj.gov
 6 │
 7 │ TODD KIM
   │ Assistant Attorney General
 8 │ STEPHEN DA PONTE
   │ Trial Attorney
 9 │ Florida Bar No. 58454
   │ 150 M Street, N.E.
10 │ Washington, D.C. 20002
   │ Telephone: (202) 305-2729
11 │ Email: Stephen.DaPonte@usdoj.gov
12 │ Attorneys for United States of America
```

FILED
MAY 30 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 23-cr-1044-TWR |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, Melanie K. Pierson, Assistant United States Attorney, Todd Kim, Assistant Attorney General, and Stephen Da Ponte, Senior Trial Attorney, and Defendant INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH, with the advice and consent of George M. Chalos, Esq., counsel for Defendant, as follows:

//

Plea Agreement                                              Def. Initials ___

# I

## THE PLEA

1. Defendant agrees to waive Indictment and plead guilty to Count 1 of an Information charging Defendant with:

> On or about May 31, 2022, within the navigable waters, internal waters, and ports of the United States in the Southern District of California, INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH, the defendant, acting through its agents and employees, did knowingly fail to maintain an accurate Oil Record Book for the Motor Vessel (MV) Donald. All in violation of Title 33, United States Code, Section 1908(a); and Title 33, Code of Federal Regulations, Section 151.25.

2. Defendant shall be represented by an authorized representative and by counsel (counsel may be the authorized representative) and shall appear in open court and plead guilty to the one-count Information pending in this case. By entering into this Agreement, Defendant waives any right to have the facts that the law makes essential to the punishment either charged in the Information, proved to a jury, or proven beyond a reasonable doubt.

3. In furtherance of this (or related) prosecution(s) Defendant shall:

   (a) truthfully and completely disclose all information with respect to the activities of the company, its present and former officers and employees, and others concerning all matters about which the Government inquires of it;

   (b) cooperate fully with the Government and any other law enforcement agency designated by the Government;

   (c) at the request of the Government, use its best efforts promptly to secure the attendance and truthful statements or testimony



of any officers, agents, or employees at any meeting or interview, before the grand jury, or at any trial or any court proceedings;

(d) use its best efforts promptly to provide the Government, upon request, any document, record, or other tangible evidence relating to matters or conduct about which the Government or any designated law enforcement agency inquires;

(e) bring to the Government's attention all criminal conduct by or criminal investigations of the company or any of its employees (to include senior management) that come to the attention of the company's senior management, as well as any administrative proceeding or civil action, brought by any United States governmental authority that alleges violations by Defendant;

(f) file no motions, make no statements, or take any position whatsoever in relation to any motion that the Government may file regarding a request or recommendation to the Court for an award to be paid to any persons pursuant to 33 U.S.C. § 1908(a); and

(g) not retaliate against any crew member who cooperated with the investigation and prosecution of this case, to include any refusal of future employment of a crew member because of the crew member's cooperation.

4. Defendant agrees that this agreement will be executed by an authorized representative.

5. The parties have previously executed an Agreement on Security which provides for, among other things, the maintenance of certain crew members. This Agreement on Security remains in effect until final disposition of this matter and related matters.

6. The Government agrees to (1) defer any other charges based on the same conduct, and (2) not prosecute Defendant thereafter on such deferred charges unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If Defendant breaches this agreement or the guilty plea is set aside, section XII below shall apply.

## II

### NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

1. The MV Donald was a vessel of 400 or more gross tons that was registered in a country other than the United States;

2. INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH, the defendant corporation, acting through its agents and/or employees, who were acting within the scope of their agency and/or employment and at least in part for the benefit of the corporation, was a person in charge of machinery space operations for which entries are required to be accurately recorded in the Oil Record Book;

3. On or about the date charged, when the MV Donald entered the navigable waters, internal waters, and ports of the United States, and while the vessel remained therein, agents and/or employees of the defendant corporation, acting within the scope of their agency or employment and at least in part for the benefit of the corporation, failed to maintain an accurate Oil Record Book in which the transfers of oily bilge water and the discharges or disposal otherwise of oily bilge water were recorded as required by U.S. law;

Plea Agreement                          4                          Def. Initials 

4. The defendant corporation, acting through its agents and/or employees, who were acting within the scope of their agency or employment and at least in part for the benefit of the defendant corporation, acted knowingly.

B. ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The Defendant admits the following facts and agrees that they are not a complete recitation, but merely an outline of what happened in relation to the charge to which the Defendant is pleading guilty. The following facts are true and undisputed:

1. The Defendant. Defendant INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH was a company incorporated in The Federal Republic of Germany with a place of business located at Konsul-Smidt Str. 76A D-28217, Bremen, Germany. At all relevant times, INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH served as the operator of the vessel Donald.

2. The Vessel. The Donald (International Maritime Organization Number 9273791) was a 10,899 gross ton vessel, registered and operated under the flag state administration of Liberia. The Donald was engaged in international commercial maritime operations transporting cargo to and from San Diego, California, and elsewhere. The Donald had a "Chief Engineer" assigned as the person in charge of the vessel's engine room, as well as, among others, a "Second Engineer," a "Third Engineer," a "Fitter," and an "Oiler" who assisted the Chief Engineer. The crew

members working in the engine room were responsible for, among other things, shipboard control of machinery space waste, to include oily bilge water. These crew members working in the engine room were all agents or employees of INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH, the corporate operator of the Donald, and they acted within the scope of their agency or employment with INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH when serving onboard the Donald.

3. The Investigation. On or about May 27, 2022, a crewmember sent the U.S. Coast Guard an email reporting that a senior engineer onboard the Donald had ordered crewmembers to pump oily bilge water directly from the bilge to the Sewage Tank, after which it was discharged into the sea. A few days later, on or about May 31, 2022, the Donald arrived in San Diego, California, where a routine Port State Control examination by the U.S. Coast Guard had been previously scheduled. During its examination of the Donald, the U.S. Coast Guard corroborated the report it had received.

4. The Oil Record Book for the MV Donald states that from October 2019 through February 2022, approximately 19.2 cubic meters (5,072 gallons) of oily bilge water was transferred from the engine room bilge to the Donald's Bilge Holding Tank and was then discharged to shore side reception facilities. This is an average of approximately 0.66 cubic meters (174 gallons) per month, or approximately 5.8 gallons per day. From March 2, 2022, to May 24, 2022 (a span of 84 days), the Oil Record Book has no entries of oily bilge water being transferred from the engine room bilge to the Donald's Bilge Holding Tank. As the Donald was heading to

San Diego, California, and as the crew was preparing for the scheduled U.S. Coast Guard examination, the Oil Record Book notes the transfer of 0.2 cubic meters of oily bilge water on May 25, 2022, and an additional 0.3 cubic meters of oily bilge water on May 28, 2022, from the engine room bilge to the Bilge Holding Tank.

5. The engine room bilge alarm records for the Donald state that, between March 2, 2022, and May 24, 2022, high-level engine room bilge alarms sounded on multiple dates, during which zero oily bilge water was recorded in the vessel's Oil Record Book as having been transferred from the engine room bilge to the Bilge Holding Tank.

6. Between May 29 and May 30, 2022, a series of email exchanges took place between senior crew members onboard the Donald and shore-side managers of INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH in preparation for the vessel's arrival in San Diego, California, and U.S. Coast Guard inspection. These emails discussed, among other things: that there should not be any pipe on board the vessel that may be assumed to have been used for illegal discharges; efforts to get the crewmember who reported the illegal discharges to revise his report; that the handwritten paper sounding sheets made by the Oiler to record the volume of liquid in the various tanks of the vessel should be thrown away after the Oil Record Book entries are corrected; and that the Sewage Tank should be emptied and cleaned, and the activity logged in the Engine Room Logbook as "routine cleaning." Senior crewmembers then carried out the above listed tasks in accordance with their email correspondence with the shore-side managers of INTERUNITY

MANAGEMENT (DEUTSCHLAND) GMBH. A shoreside-side manager also sent an email to senior crewmembers advising them that the U.S. authorities needed a true statement.

7. On or about May 31, 2022, when the Donald called at the port of San Diego, California, the vessel's crew knowingly failed to maintain an accurate Oil Record Book in violation of 33 U.S.C. § 1908(a), as the previously described internal transfers of oily bilge water and the overboard discharge of oily bilge water from the Sewage Tank were not recorded in the vessel's Oil Record Book, and the weekly entries in the Oil Record Book claiming that 0.3 cubic meters of oily bilge water were being retained in the Bilge Holding Tank were inaccurate.

### III
### PENALTIES

The crime to which Defendant is pleading guilty carries the following penalties:

A. a maximum period of five years of probation for an organization;
B. a fine which is the greater of $500,000 or twice the amount of gross gain or loss;
C. a mandatory special assessment of $400 per count; and
D. an obligation to pay any applicable interest or penalties on fines and restitution not paid at the time of sentencing.

### IV
### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

Plea Agreement

8

Def. Initials 

|   |    |   |
|---|----|---|
| A. | Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt; |
| B. | A speedy and public trial by jury; |
| C. | The assistance of counsel at all stages; |
| D. | Confront and cross-examine adverse witnesses; and |
| E. | Testify and present evidence and to have witnesses testify on behalf of Defendant. |

V

**DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE
PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

Any information establishing the factual innocence of Defendant known to the undersigned prosecutors in this case has or will be turned over to Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

VI

**DEFENDANT'S REPRESENTATION THAT GUILTY
PLEA IS KNOWING AND VOLUNTARY**

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable Government benefits. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation in another case; debarment from

Plea Agreement        9        Def. Initials 

Government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's agents or employees to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA & ENVIRONMENT AND NATURAL RESOURCES DIVISION

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and the Environment and Natural Resources Division of the United States Department of Justice and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

This case is governed by the Sentencing Reform Act, as modified by United States v. Booker, 543 U.S. 220 (2005), and the Federal Sentencing Guidelines, except that the fine calculations for environmental offenses are not governed by USSG § 8C2.1.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by

statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the guilty plea.

## X
## PARTIES' SENTENCING RECOMMENDATIONS

A. SENTENCING GUIDELINE CALCULATIONS

As stated above, this case is governed by the Sentencing Reform Act, as modified by United States v. Booker, 543 U.S. 220 (2005), and the Federal Sentencing Guidelines, except that the fine calculations for environmental offenses are not governed by USSG § 8C2.1.

B. NO FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may not request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553 unless requested by the Court.

C. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in section II.B of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

D. SPECIAL ASSESSMENT/MONETARY PENALTY/RESTITUTION/FORFEITURE

1. Special Assessment



1  The parties will jointly recommend that Defendant pay a special
2  assessment in the amount of $400.00 per felony count of conviction to
3  be paid forthwith at time of sentencing. Special assessments shall be
4  paid through the office of the Clerk of the District Court by bank or
5  cashier's check or money order made payable to "Clerk, United States
6  District Court."

  2.  Monetary Penalty

8  a. The parties will jointly recommend that Defendant pay a monetary
9  penalty of $1,250,000, consisting of a criminal fine of $937,500, and
10 a community service payment of $312,500. This community service payment
11 shall be designated as organizational community service pursuant to 18
12 U.S.C. § 3563(b)(12) and § 8B1.3 of the United States Sentencing
13 Guidelines and in furtherance of satisfying the sentencing principles
14 provided for under 18 U.S.C. § 3553(a). Within 30 days of sentencing,
15 Defendant shall make the community service payment of $312,500 to the
16 National Fish and Wildlife Foundation ("NFWF") as provided below.

17 b. NFWF is a nonprofit organization established by the United
18 States Congress pursuant to 16 U.S.C. §§ 3701-3710. Its purposes include
19 the acceptance and administration of "property . . . to further the
20 conservation and management of fish, wildlife, plants, and other natural
21 resources," and the performance of "such other activities as will
22 further the conservation and management of the fish, wildlife, and plant
23 resources of the United States, and its territories and possessions for
24 present and future generations of Americans." 16 U.S.C. § 3701(b)(1),
25 (2).

26 c. NFWF is specifically empowered by Congress to "receive and
27 administer restitution and community service payments, amounts for

mitigation of impacts to natural resources, and other amounts arising from legal, regulatory, or administrative proceedings, subject to the condition that the amounts are received or administered for purposes that further the conservation and management of fish, wildlife, plants, and other natural resources." 16 U.S.C. § 3703(c)(1)(K).

d. NFWF is also required by its charter to submit to Congress annually a report of its proceedings and activities during such year, including a full and complete statement of its receipts, expenditures, and investments. 16 U.S.C. § 3706(a), (b).

e. NFWF shall use the community service funds paid by Defendant to fund projects, activities, or initiatives intended to benefit marine and coastal natural resources located in or around the Tijuana River National Estuarine Research Reserve. The types of projects, activities, and initiatives to be considered for funding by NFWF should be focused on, but not necessarily limited to, those intended to: (1) conduct research related to the effects of pollution on the marine estuarine environment; (2) protect and restore estuarine natural resources and habitats impacted by current or historic pollution or other human-caused disturbance; (3) control invasive plants; (4) monitor, protect, and restore sensitive species; and/or (5) conduct sediment management for the benefit of marine and coastal ecosystems.

f. NFWF shall use best efforts to obligate the community service funds to appropriate projects, activities, and initiatives within three years of the date of entry of Judgment in this case. NFWF shall further report to the United States Probation Office for the Southern District of California and to the Environment and Natural Resources Division, on at least an annual basis, regarding the status and disposition of the
Plea Agreement 13 Def. Initials 

community service funds it has received pursuant to this Section, until all such funds have been expended.

    g. The Defendant shall remit the community service payment to NFWF by either certified check or electronic funds transfer. Certified checks should be delivered to the National Fish and Wildlife Foundation, attention Chief Financial Officer, 1133 15th Street NW, Suite 1000, Washington DC, 20005, and should include a reference to the case number in this proceeding. Payments via electronic funds transfer should be made in accordance with written wiring instructions provided by NFWF through its Chief Financial Officer or Senior Vice President, Impact-Directed Environmental Accounts, at the time of transfer.

    h. The Defendant agrees and stipulates that the $1,250,000 monetary penalty amount is consistent with 18 U.S.C. § 3571 and that it has been properly calculated as representing twice the gain to defendant from the offense. Defendant recognizes and agrees that it will not seek to have payment of any monies pursuant to this plea agreement treated as a tax-deductible donation; nor will Defendant make any public statement classifying any payments as voluntary contributions; nor will Defendant seek to gain any benefit in other claims or litigation. The parties further agree that the entire $937,500 fine, $312,500 community service payment, and the $400 special assessment shall be paid within 30 days of sentencing.

    3. Restitution

The parties are not aware of any identifiable victim of the offense for which restitution is appropriate, and jointly recommend that no restitution be ordered in this case.

    4. Forfeiture

Federal law states Defendant must forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds obtained directly or indirectly from the offense. The parties are not aware of any property subject to forfeiture in this case, and jointly recommend that no property of the Defendant be forfeited.

E. PROBATION

The parties agree and will recommend to the Court that Defendant serve a period of probation of 4 years from the date of execution of sentence. During the probationary period, Defendant agrees to fund and implement a comprehensive Environmental Compliance Plan (ECP), included as Attachment A to this plea agreement. Implementation of the ECP is a condition of probation. In the event the Court, in consultation with the United States Attorney's Office for the Southern District of California, the Environment and Natural Resources Division of the United States Department of Justice, the United States Probation Office, and Defendant, determines that Defendant has failed to either satisfactorily implement the ECP or has violated the terms of the ECP, the probationary term may be extended for a period to be determined by the Court.

F. PRE-SENTENCE REPORT

The parties agree to recommend to the Court that the preparation of a Pre-Sentence Report be waived in this case, and that the matter be set for sentencing promptly following the plea, as the Court's schedule permits.

XI

DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Def. Initials

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility;
3. Failing to appear in court;
4. Attempting to withdraw the guilty plea;
5. Failing to abide by any court order related to this case;

Plea Agreement

16

Def. Initials 

  6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement;

  7. Engaging in additional criminal conduct from the time of signing this agreement until the time of sentencing.

  8. Filing any motions, making any statements, or taking any position whatsoever in relation to any motion that the Government may file regarding a request or recommendation to the Court for an award to be paid to any persons pursuant to 33 U.S.C. § 1908(a).

 If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

 Additionally, if Defendant breaches this plea agreement: (i) any statements made by representatives of the Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this

Plea Agreement          17         Def. Initials

agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

### XIII
### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

### XIV
### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant and all relevant members of the defendant organization have read it. Defendant and all of the relevant members of the defendant organization have discussed the terms of this agreement with defense counsel and fully understand its meaning and effect.

### XV
### DEFENDANT SATISFIED WITH COUNSEL

Plea Agreement

18

Def. Initials 

1  The members of the defendant organization have consulted with
2  counsel and are satisfied with counsel's representation. This is
3  Defendant's independent opinion, and Defendant's counsel did not advise
4  Defendant about what to say in this regard.
5
6                                         RANDY S. GROSSMAN
                                          United States Attorney
7
8  May 5, 2023                            *Melanie K Pierson*
   _____
   DATED                                  MELANIE K. PIERSON
9                                         Assistant U.S. Attorney
10
                                          TODD KIM
11                                        Assistant Attorney General
                                          Environment & Natural Resources Division
12
13 May 5, 2023                            *S Da Ponte*
   _____
   DATED                                  STEPHEN DA PONTE
14                                        Senior Trial Attorney
15
   5/5/23
16 _____
   DATED                                  GEORGE M. CHALOS
17                                        Defense Counsel
18 IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER
   PENALTY OF PERJURY THAT THE FACTS IN SECTION II.B ABOVE ARE TRUE.
19
20 4th May 2023
   _____
   DATED
21                                        For Defendant              Christos Mangos
                                          INTERUNITY MANAGEMENT
22                                        (DEUTSCHLAND) GMBH         Director
23
24                                        *signature*  5/30/2023
25
26                                        George M. Chalos
                                          - As Authorized Representative  mkp
27
28
                                          19
   Plea Agreement                                           Def. Initials