RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
Assistant United States Attorney
California State Bar No. 112520
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7976/Fax: (619) 546-0631
Email: melanie.pierson@usdoj.gov

TODD KIM
Assistant Attorney General
STEPHEN DA PONTE
Senior Trial Attorney
Florida Bar No. 58454
150 M Street, N.E.
Washington, D.C. 20002
Telephone: (202) 305-2729
Email: Stephen.DaPonte@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

INTERUNITY MANAGEMENT (DEUTSCHLAND) GMBH,

Defendant.

Criminal Case No. 23-CR-1044-TWR

The Hon. Todd W. Robinson

**GOVERNMENT MOTION FOR WHISTLEBLOWER AWARD**

COMES NOW plaintiff, the UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, Melanie K. Pierson, Assistant United States Attorney, Todd Kim, Assistant Attorney General, and Stephen Da Ponte, Senior Trial Attorney, and hereby respectfully moves this Court to grant this Motion for Whistleblower Award. This motion is based on the files and records of this case, and the points and authorities below.

## PROCEDURAL HISTORY & SUMMARY OF REQUEST

The acceptance of the plea for *U.S. v. Interunity Management (Deutschland) GMBH*, 23-CR-1044, occurred on June 12, 2023, and the defendant was sentenced on June 29, 2023. The United States respectfully moves the Court to award $468,750 (USD), attributable to Interunity Management (Deutschland) GMBH ("Interunity") for a violation of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a) ("APPS")[1], to be distributed among four cooperating crew members in the amounts specified below:

| | | |
|---|---|---|
| Jay Geroy | - | $300,000 |
| Jed Reballos | - | $100,000 |
| Renan Rana | - | $50,000 |
| Domer Beltran | - | $18,750 |

For the reasons explained below, the government believes these amounts appropriately reward the crew members for the information they provided that resulted in this prosecution and is commensurate with other prior awards. Interunity has agreed, pursuant to the plea agreement, not to oppose this motion. Doc. 6 at 3. The United States has not previously discussed the proposed award that is the subject of this motion with any of the crew members from the *Donald*.

## PORTION OF FINE AVAILABLE AS AN APPS AWARD

Section 1908(a) of APPS provides that "[a] person who knowingly violates the MARPOL Protocol, this chapter, or the regulations issued thereunder commits a class D felony. In the discretion of the Court, an amount equal to not more than ½ of such fine may

[1] APPS is the domestic implementation of the International Convention on the Prevention of Pollution from Ships which is commonly referred to as "MARPOL" – shorthand for "maritime pollution."

be paid to the person giving information leading to conviction." Since Interunity was convicted of violating APPS and sentenced to pay a fine of $937,500[2], the total amount of $468,750 is available as an award.

**IMPORTANCE OF AN APPS AWARD**

The APPS award provision serves a valuable law enforcement purpose by encouraging those most likely to know of illegal conduct to report it and cooperate with law enforcement. Because the discharge of oily bilge water typically takes place in the middle of the ocean in international waters, the only persons likely to know about the conduct and the falsification of a vessel's Oil Record Book are the crewmembers. Absent crewmembers with firsthand knowledge of the illegal conduct coming forward, APPS violations are otherwise extremely difficult to uncover. Further, a crewmember who reports illegal conduct faces potential reprisal, such as the likelihood that he will lose gainful employment and be barred—whether formally or informally—from working in the marine shipping industry in the future. A substantial monetary award, as provided by APPS, both rewards crew members for taking those risks and provides an incentive for other crew members to come forward and report illegal conduct on vessels in the future.

**ASSISTANCE PROVIDED BY THE CREWMEMBERS**

***Jay Geroy***:

Jay Geroy served as the Second Engineer onboard the *Donald*. On May 27, 2022, he sent the U.S. Coast Guard an email reporting that the *Donald's* chief engineer, Denys Korotkiy, had ordered crewmembers to pump oily bilge water directly from the bilge to the

[2] In addition to the $937,500 criminal fine, Interunity paid $312,500 as community service. As the community service payment is not part of the criminal fine, it is excluded from the amount available as an APPS award.

Sewage Tank, after which it was discharged into the sea. On May 31, 2022, the *Donald* arrived in San Diego, California, where a routine Port State Control examination by the U.S. Coast Guard had been previously scheduled. During its examination of the *Donald*, the U.S. Coast Guard corroborated the report it had received from Geroy.

In addition to sending the email report to the Coast Guard, Geroy gathered evidence to help prove his allegations. Specifically, Geroy took photographs documenting the use of a portable pump and hoses to transfer oily bilge water from the bilge to the Sewage Tank. Geroy also made a copy of an email exchange between shoreside managers of Interunity and the *Donald's* captain and Chief Engineer Kortkiy. This email exchange documented efforts by Interunity senior shoreside and ship based officers to cover up the illegal transfers and discharges by cleaning the Sewage Tank and destroying Sounding Sheets. Geroy also took videos of Chief Engineer Korotkiy cleaning the Sewage Tank in preparation for the Coast Guard's inspection. Additionally, Geroy made copies of the Sounding Sheets before they went missing onboard the *Donald*. Geroy provided all of this evidence to the U.S. Coast Guard, which was crucial in the prosecution of Interunity and Chief Engineer Korotkiy. Finally, Geroy testified for the Government at Korotkiy's trial.

***Jed Reballos***:

Jed Reballos served as the Third Engineer onboard the *Donald*. He provided information that corroborated Geroy's allegations. Specifically, Reballos explained that he came onboard the *Donald* on Apr 30, 2022, and was chastised by Korotkiy approximately one week later because the Bilge Holding Tank level increased. He explained that Korotkiy ordered him to use a portable pump to pump the bilge to the Sewage Tank. Reballos reported

that he transferred the starboard, port, and aft bilge wells to the Sewage Tank 3 to 4 times after that order from Korotkiy. Reballos also explained how Korotkiy ordered him to transfer the contents of the Sewage Tank to the Dirty Oil Tank and then ordered him to clean the Sewage Tank while the *Donald* was en route to San Diego. Reballos also explained how he was afraid of losing his job if he disobeyed Korotkiy's orders because Korotkiy wrote his performance evaluation and how the *Donald's* captain told him to do a "favor" and not to tell the U.S. Coast Guard about the illegal transfers and discharges. Reballos provided all of this information to the U.S. Coast Guard, which was important in the prosecution of Interunity and Chief Engineer Korotkiy. Finally, Reballos testified for the Government at Korotkiy's trial.

***Renan Rana***:

Renan Rena served as the Oiler onboard the *Donald*. He provided information that corroborated Geroy's allegations. Specifically, Rena explained that he took soundings every morning, recorded them on Sounding Sheets, and gave them to Korotkiy. He explained that the Sounding Sheets were kept on a clipboard by Korotkiy's desk, and that they were gone when the *Donald* arrived in San Diego. Rena also explained that he heard Korotkiy discussing with Geroy not to put bilge water in the Bilge Holding Tank, and that he saw the pump and hose transferring from the bilge wells to the Sewage Tank set up on two occasions. Rena also described how Korotkiy told him to hide the pump and hoses when the *Donald* was approaching ports. Additionally, Rena confirmed that the copies of the Sounding Sheets made by Geroy were true copies of the original records he had made while onboard the vessel. He provided all of this information to the U.S. Coast Guard, which was important in

the prosecution of Interunity and Chief Engineer Korotkiy. Finally, Rena testified for the Government at Korotkiy's trial.

***Domer Beltran:***

Domer Beltran was the Electrical Officer onboard the *Donald*. He provided information that corroborated Geroy's allegations. Specifically, Beltran explained that he had heard orders to transfer from the bilge but didn't know where the transfers were being made to. He described how he saw the pump and hoses set up in the Engine Room, but was not sure where the pump was pumping from or where it was pumping to. He also explained how he heard an argument between Korotkiy and Geroy sometime in March or April of 2022, regarding the soundings and why the level in the Bilge Holding Tank had increased. Additionally, Beltran described how he tested the bilge alarms onboard the *Donald* and how the alarms were all working properly. He provided all of this information to the U.S. Coast Guard, which was important in the prosecution of Interunity and Chief Engineer Korotkiy. Finally, Beltran testified for the Government at Korotkiy's trial.

Ultimately, Interunity pleaded guilty to violating APPS, and must pay a substantial fine of $937,500 (excluding the $312,500 community service payment), complete a four-year term of probation, and is required to implement a comprehensive Environmental Compliance Plan. Additionally, and also as a direct result of the information provided by Geroy, Reballos, Rena, and Beltran, Chief Engineer Denys Korotkiy was convicted after a trial of conspiracy to obstruct justice, obstruction of justice, and of violating APPS. He is scheduled to be sentenced by this Court on September 1, 2023.

It is highly likely that absent the information provided by these four crewmembers

to the U.S.Coast Guard, the illegal conduct occurring onboard the *Donald* may never have been discovered.

## HISTORICAL APPS AWARD PAYMENTS

There have been dozens of APPS award payments made over the years. The amounts have generally ranged from $150,000 to $500,000[3] and are on occasion split between two or more whistleblowers.[4] In larger cases, the award amount is generally higher. In *U.S. v. Columbia Shipmanagement Ltd.*, 2:13-cr-193 (D.N.J. 2013), the conduct involved four vessels in three districts and the defendant company was sentenced to a fine of $10,400,000.

[3] Many awards over the years did not include a tax withholding. As discussed in greater detail below, this is something that is now routinely required and has in other cases been determined to be 30% of the award amount.

[4] *United States v. New Trade Ship Management S.A. et al,* 3:22-cr-01802-JO, 42 (S.D.C.A. 2022): award of $550,000 to one crewmember whistleblower, the maximum amount available; *United States v. Diana Wilhelmsen Management Limited,* 2:21-cr-00020, 31 (E.D.V.A. 2021): award of $450,000 divided evenly between three crew members. *United States v. Misuga Kaiun Co. Ltd.*, 6:20-cr-103, 29 (M.D. Fla. 2020): award of $375,000 to one crewmember whistleblower, half of the amount available. *United States v. Bernhard Schulte Shipmanagement (Singapore) Pte. Ltd.*, 1:20-cr-4, 28 (D. Haw. 2020): award of $300,000 to one crewmember whistleblower, two-thirds of the amount available. *United States v. Unix Line Pte. Ltd.*, No. 4:19-cr-559, 68 (N.D. Cal. 2020): award of $412,500, the maximum amount available, each to two crewmember whistleblowers. *United States v. Portline Bulk International, S.A.*, No. 19-CR-00434 (D.S.C. 2019): award of $500,000, the maximum amount available, divided between three crewmembers ($200,000, $150,000, and $150,000). *United States v. Aegean Shipping Management, S.A.*, No. 16-CR-00551 (D.S.C. 2017): award of $500,000, the maximum amount available, divided between three crewmembers ($250,000, $150,000, and $100,000). *United States v. DSD Shipping, AS*, No. 15-CR-00102 (S.D. Ala. 2016): award of $750,000, the maximum amount available, divided equally between two crewmembers. *United States v. Marine Managers Ltd.*, No. 14-CR-00118 (E.D. La. 2015): award of $200,000, the maximum amount available, divided equally between two crewmembers. *United States v. Diana Shipping Services S.A.*, No. 13-CR-00040 (E.D. Va. 2013): award of $150,000, the maximum amount available, divided equally between two crewmembers. *United States v. Giuseppe Bottiglieri Shipping Company S.P.A., et al.*, No. 12-CR-00057 (S.D. Ala. 2012): award of $500,000, the maximum amount available, split between five crewmembers in varying amounts. *United States v. Odysea Carriers, S.A., et al.*, No. 12-CR-00105 (E.D. La. 2012): award of $183,000, the maximum amount available, to one crewmember. *United States v. Target Ship Management Pte. Ltd., et al.*, No. 11-CR-00368 (S.D. Ala. 2012): award of $250,000, the maximum amount available, split between seven crewmembers in varying amounts. *United States v. Ilios Shipping Company S.A., et al.*, No. 11-CR-00286 (E.D. La. 2012): award of $350,000, the maximum amount available, to one crewmember. *United States v. Keoje Marine Co. Ltd., et al.*, No. 11-CR-01258 (D. Haw. 2012): award of $150,000, the maximum amount available, paid to one crewmember.

The government sought $1,000,000 to be paid as a whistleblower award to be split amongst nine crewmembers from different ships. The Court granted the motion and awarded each of the cooperating crewmembers $111,111. *Columbia*, 2:13-cr-193, ECF Doc. 15.

In *U.S. v. Pacific Carriers Limited*, 4:20-cr-87, 90 & 98 (E.D.N.C. 2020), the corporate defendant was convicted of several APPS counts (along with other counts) in three judicial districts and ordered to pay a fine of $12,000,000. The government moved for the payment of $1,000,000 to a single whistleblower which the court granted. *Pacific Carriers Limited*, 4:20-cr-90, Rec. Doc. 30.

In *Wallenius Shipmanagement Pte. Ltd.*, 2:06-cr-00213 (D.N.J. 2006), the corporate defendant was convicted of APPS crimes related to the discharge of oily bilge water and garbage, along with obstruction of justice, within a single judicial district and ordered to pay a fine of $5,000,000 which was apportioned only to the APPS counts. *Wallenius*, 2:06-cr-213, ECF Doc. 18. The Court awarded four whistleblower crewmembers $625,000 each, for a total award amount of $2,500,000.

In *U.S. v. Princess Cruise Lines Ltd.*, 1:16-cr-20897 (S.D. Fla. 2017), the defendant corporation was prosecuted for various crimes including MARPOL/APPS and assessed a criminal penalty of $40,000,000. Of that amount, $2,000,000 of the fine was allocated to four APPS counts. There was one whistleblower in the case and he was awarded $1,000,000. *Princess*, 1:16-cr-20897, ECF Doc. 29.

The largest APPS award payment to one whistleblower was in the case of *U.S. v. OMI Corporation, et. al.*, 2:04-cr-60, (D.N.J. 2004). The defendant was convicted of APPS crimes and fined $4,200,000. The Court awarded the whistleblower $2,100,000.

## TAX WITHOLDING

The Proposed Order directs the payment of the awards to the four crewmembers and in the amounts discussed above, minus any withholding tax that must be sent to the Internal Revenue Service. In recent cases where a whistleblower award was granted, the Administrative Office of the United States Courts ("AO") determined that the whistleblower award was subject to a 30% tax withholding. The Government believes that any award to the crewmembers in this case may also be subject to the same 30% tax withholding. In order to protect the personal financial information of the crew members, the Proposed Order includes a provision that directs the Government to provide the electronic bank routing and account information to the Clerk under separate cover so that information is not made public.

## CONCLUSION

The Government respectfully requests this Honorable Court exercise its discretion pursuant to APPS, grant this motion, and award $300,000 to Mr. Jay Geroy, $100,000 to Mr. Jed Reballos, $50,000 to Mr. Renan Rena, and $18,750 to Mr. Domer Beltran, subject to any tax withholding as determined by the AO. The Government believes this amount is proper given the nature and circumstances of this case and is commensurate with other similarly situated awards.

//

//

//

Dated: July 18, 2023.

Respectfully submitted

RANDY S. GROSSMAN,
United States Attorney

s/ Melanie K. Pierson
MELANIE K. PIERSON
Assistant U.S. Attorney

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

s/ Stephen Da Ponte
STEPHEN DA PONTE
Senior Trial Attorney